# Birmingham Railway, Light & Power Co. *v.* Ellis, *pro ami.*

## *Malicious Prosecution.*

(Decided June 30 ,1911. Rehearing denied May 9, 1912.
58 South. 796.)

1. *Malicious Prosecution; Evidence.*—Upon the issue of agency, and whether plaintiff's arrest was caused by an agent of defendant under a warrant charging him with violating the act relative to the use of street car transfers, it was competent to show that an agent

[Birmingham Railway, Light & Power Co. v. Ellis, pro ami.]

of the defendant paid the fare of the officer who arrested the plaintiff in this case, and that such agent was present at plaintiff's trial, and endeavored to get him to settle the case.

2. *Same; Burden of Proof.*—Where the action for malicious prosecution alleged that the prosecution was instituted by an agent of defendant, plaintiff had the burden of proving not only malice and the absence of probable cause, but that plaintiff's arrest was instituted by the agent, and that he was acting under the directions of the defendant, or within the scope of his duties as such employee.

3. *Same.*—The evidence stated and examined, and held insufficient to show that the arrest was made under the direction of the defendant, or that the agent was acting within the scope of his authority when causing the arrest.

4. *Same; Probable Cause.*—The evidence stated and held to show that there was probable cause for believing plaintiff guilty of the offense charged, and so to require the general charge for the defendant.

5. *Same; Question of Law.*—Where the facts are undisputed in an action for malicious prosecution, the question of probable cause is one for the court.

APPEAL from Jefferson Circuit Court.

Heard before Hon. A. O. LANE.

Action by Tom Ellis, by next friend, against the Birmingham Railway, Light & Power Company, for damages for malicious prosecution. Judgment for plaintiff and defendant appeals. Reversed and remanded.

TILLMAN, BRADLEY & MORROW, and CHARLES E. RICE, for appellant. Counsel discuss the exceptions to the evidence, but without citation of authority. They insist that the court erred in refusing the third charge requested in writing.—*So. C. O. v. Walker,* 51 South. 175; *Bennett v. The State,* 160 Ala. 25; *Schneider v. The State,* 145 Ala. 36; *Hall v. The State,* 122 Ala. 88. They further insist that defendant was entitled to the affirmative charge, as the evidence without dispute showed the existence of probable cause, and fails to show that defendant instituted prosecution or that the agent was acting within the line and scope of his authority in instituting the prosecution.

[Birmingham Railway, Light & Power Co. v. Ellis, pro ami.]

A. LEO OBERDORFER, for appellee. The court was not in error in permitting it to be shown that defendant's agent paid the fare of the officer arresting plaintiff, and that he was present, assisting at the trial.—*Lytle & Co. v. Bank of Dothan,* 121 Ala. 215; *Garden v. Holly,* 157 Ala. 652; *Robinson & Co. v. Green,* 148 Ala. 434; *Gambell v. Fuqua,* 148 Ala. 448. Counsel discusses other assignments of error and insist on the above authority that there was no error committed. Charge 3 was abstract.—*Williams v. Barksdale,* 58 Ala. 288; *Schneider v. The State,* 145 Ala. 36; *Bennet v. The State,* 160 Ala. 25. There was such contradiction in the evidence as to require the matters to be submitted to the jury.— *Abingdon Mills v. Grogan,* 52 South. 596.

PER CURIAM.—This action is by the appellee against the appellant for damages resulting from the arrest and imprisonment of the plaintiff on a charge of violating the act providing for the regulation and use of transfers issued by street railway companies. The appellee's brief states that it is for malicious prosecution and false imprisonment, but, as there is no allegation or proof of the invalidity of the proceedings for arrest, it must be treated as an action for malicious prosecution. According to the plaintiff's testimony, he was placed behind the bars for 10 or 15 minutes.

There was no error in overruling the objection to the question to the witness Kennedy, "Who paid your fare out there?" nor in overruling the motion to exclude the answer thereto that Brown paid it. Kennedy was the deputy who made the arrest, and, while it is true that the payment by one of the car fare of another may be a very slight circumstance, yet as the case which the plaintiff was attempting to make was that Brown was the agent of the defendant to have the plaintiff arrested,

and that Kennedy was acting at the instigation of Brown, this was a circumstance properly provable. For the same reason there was no error in permitting the witness (plaintiff) to testify that Brown was present at the trial, though it was capable of explanation by proof that Brown was there simply as a witness.

The conversation of Brown with the plaintiff, in which it is claimed that Brown sought to persuade the plaintiff to settle the case, was for the same reason properly admitted, though it is capable of the construction that Brown was simply seeking to save himself the trouble of coming from Nashville as a witness again, under which construction it could work no injury to the defendant. At the close of the evidence on the part of the plaintiff, the defendant moved to exclude all of the evidence on the ground that a prima facie case had not been made out against the defendant.

In order to recover in an action of malicious prosecution, it is necessary to prove that the prosecution was without probable cause and malicious, and, while malice may be inferred from an entire absence of probable cause (though probable cause cannot be inferred from malice), yet it is not a necessary inference.—4 Mayf'. Dig. p. 113; *Ewing v. Sandford,* 19 Ala. 606, 612.

In this case it was not only necessary to prove absence of probable cause and malice, but also to prove that the arrest was made at the instigation of Brown, and that he was acting under the authority and directions of the defendant or within the scope of his duties as an employee of the defendant.—4 Mayfield's Dig. 4. 113, § 10; 10 Ccy. 1210-1211, 1218; *Southern Express Co. v. Couch,* 113 Ala. 285, 288, 289, 32 South. 167; *Southern Car & Foundry Co. v. Adams,* 131 Ala. 148, 158, 159, 32 South. 503; *Abingdon Mills v. Grogan,* 167 Ala. 146, 52 South. 596, 598.

The evidence on the part of the plaintiff was that J. D. Brown was an officer of the defendant company; that witness was sent out from the sheriffs office to meet Brown at Ensley; that Brown told him to watch for people giving transfers, and to arrest; that witness caught the plaintiff giving away a transfer, and Brown followed the man who received the transfer and, witness supposed, arrested him; that witness swore out the warrant for the arrest of plaintiff; that "Brown was a Railway, Light & Power Company man;" that Brown did not help to make the arrest, he arrested the man himself. The warrant was introduced and was signed by E. L. Higdon, sheriff, by J. J. Kennedy, D. S., J. D. Brown, D. S.

Witness also swore that Brown was not there at any time while the man was in custody; that he and Brown went together to the office to swear out the warrant; that Brown did not give him any directions at all in reference to making the arrest and swearing out the warrant, but that he did both himself; that they saw plaintiff get off the car with a transfer in his hand and saw him place it in the arm of Armstrong; that witness followed Ellis and arrested him, while Brown followed the man who received the transfer. On his cross-examination he stated that he could not say positively that it was a transfer, and he also stated that it was a transfer, and that he thought it was a transfer; that Brown told witness to swear out the warrant for the man witness got, and he (Brown) would swear out the warrant for the man he got.

The plaintiff, as a witness, denied giving any transfer to Armstrong, and testified that Kennedy arrested him; that he saw Brown at the trial, as a witness against him; that Brown came to him and wanted to settle "this thing up so he could go back to Nashville," and told him,

34 CA

if he did not settle, he (Brown) would put in the railway charge, but if he would settle it, he (Brown) would let half the charge go.

J. F. Armstrong testified that plaintiff did not give him any transfer, that he paid for the transfer which he had, and that Brown arrested him, and that he had pleaded guilty to the charge against himself of receiving a transfer, also that he had been on duty all night, that it was about 6:30 o'clock a. m., and he was just leaving work going home when he boarded the car.

This being all of the testimony introduced by the plaintiff, and there being nothing in it tending to show that the arrest was made under the authority or direction of the defendant, or that Brown was acting within the scope of his authority as an employee of the defendant, a prima facie case was not made out, and the motion to exclude the evidence produced by the plaintiff should have been sustained.

Said Brown, testifying for the defendant, said that he was directed by the superintendent of the defendant to go to the sheriff's office, that he went there, and that Lucien Brown, chief deputy sheriff, told him that he wished to take up the matter of the abuse of transfers in Ensley and wished a skilled and capable man to go with him, and wished the witness to go with him; that he and Kennedy went out under the orders of the chief deputy sheriff, he himself having been previously appointed deputy sheriff, and he and Kennedy agreed that, when they found any one giving away a transfer, Kennedy was to take the man giving it and he was to follow the one receiving it; that he saw plaintiff place a paper, which he thought was a transfer, in the arm of Armstrong, that Armstrong dropped the paper, picked it up and held it in his hand until he boarded the car and handed it to the conductor, and that witness then paid

the fare to the conductor and received said transfer from him; that he saw the transfer from the time Armstrong received it until it was handed to the conductor, and the transfer was presented in evidence to the court; also that he is in the employ of the Nashville Railway, Light & Power Company as a special agent, and has done detective work for that company; that the superintendent of the company sent for him to come to Birmingham; that he was assigned to other duties; that on January 6th he was ordered to go to the sheriff's office, the order stating that Lucien Brown, chief deputy sheriff, wished to see him in reference to the abuse of transfers at Ensley; that he was not receiving a salary as deputy sheriff; that he was instructed at the sheriff's office to assist in running down abuses of transfers; that he saw plaintiff get off the car with the transfer in his hand, saw him fold it up and place it in Armstrong's arm, and he kept his eye on Armstrong and on the transfer until it was handed by Armstrong to the conductor, that he was within eight feet of them when plaintiff placed the transfer in Armstrong's arm; that he signed the warrant, sworn out by Kennedy, as a witness and as deputy sheriff; that he, as a witness, attended the trial of Ellis; that he left Birmingham on April 20, 1909, and did not return until shortly before this trial.

When the facts are undisputed, the question of probable cause is one for the court to decide.—*Ewing v. Sanford,* 19 Ala. 606, 612; *McLeod v. McLeod,* 75 Ala. 484, 486, 487.

From the undisputed facts as above set out, even though it might be possible that Armstrong in some mysterious way paid for the transfer which he got just as he ceased to work early in the morning, and that the plaintiff did not know Armstrong and did not have a transfer though he does not deny that he did place a

paper in Armstrong's arm, we hold that there was probable cause for believing that the plaintiff was guilty of the offense charged. To hold otherwise would be to hold those who seek to enforce the criminal laws of the state to absolute liability if they fail to convict. Consequently, the court erred in refusing to give the general charge as to count 2 of the complaint.

The judgment of the court is reversed and the cause is remanded.

Reversed and remanded.

NOTE.—The foregoing opinion was prepared by Mr. Justice Simpson of the Supreme Court before the transfer of the case to this court, and is adopted by this court.